<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DISABILITY RIGHTS NEW JERSEY, <br><br> Plaintiff, <br><br> v. <br><br> TODD BARCLIFF, in his official capacity as Warden of the Essex County Juvenile Detention Center, DENNIS HUGHES in his official capacity as the Director of the Essex County Juvenile Detention Center, and ESSEX COUNTY JUVENILE DETENTION CENTER, <br><br> Defendants. | Civil Action No. 24-08297 <br><br> **OPINION AND ORDER** <br><br> October 11, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on Disability Rights New Jersey's ("Disability Rights NJ" or "Plaintiff") Motion for Preliminary Injunction. (ECF 2, "Motion.") Defendants Todd Barcliff, Dennis Hughes, and Essex County Juvenile Detention Center (together, "Defendants") opposed the motion. (ECF 18, "Opp.") Plaintiff filed a reply. (ECF 21, "Reply.") The Court has decided this motion upon the submissions of the parties and oral argument. For the reasons stated below, Plaintiff's Motion is **GRANTED**.

## I.    <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>[1]

Plaintiff initiated the instant matter on August 6, 2024 by filing a Verified Complaint (ECF 1, "Compl.") and Motion for Preliminary Injunction (ECF 2, Motion). Defendant Essex County

---

[1] The facts and procedural history are drawn from the Verified Complaint (ECF 1, Compl.), Plaintiff's Motion for Preliminary Injunction (ECF 6, Motion), and Defendants' Opposition (ECF 18, Opp.).

Juvenile Detention Center ("Essex JDC") is a county youth detention facility. (ECF 1, Compl. ¶ 18.) Defendant Barcliff is the Warden of Essex JDC; Defendant Hughes is the Director of Essex JDC. (*Id.* ¶¶ 16-17.) Plaintiff is the state-designated Protection and Advocacy agency for the state of New Jersey. (*Id.* ¶ 11.) In 2023, Disability Rights NJ's Director of Investigations and Monitoring ("Director Hoegel") received several reports of alleged abuse and neglect of youth with disabilities housed in Essex JDC. (*Id.* ¶ 29.) Director Hoegel and Disability Rights NJ thereafter initiated efforts to monitor Essex JDC by sending a letter of introduction to the Warden in May 2023. (*Id.* ¶ 30.) In the letter, Plaintiff requested copies of the general policies and procedures of the Essex JDC. (*Id.* ¶ 31.) Plaintiff also offered dates to conduct a "meet and greet" with Essex JDC staff and explain Plaintiff's statutory authority.

Plaintiff received no response and resent the letter on July 19, 2023. (*Id.* ¶ 33.) Defendants provided the requested policies but did not offer to set up a visit. (*Id.* ¶ 34.)

Later that year, Plaintiff received a confidential referral regarding possible educational neglect at Essex JDC, alleging that four youth with disabilities in the facility had not been permitted to attend school since September 2023. (*Id.* ¶¶ 35-36.) Based on these additional reports, Director Hoegel determined Disability Rights NJ had probable cause to believe that abuse and neglect was occurring at Essex JDC. (*Id.* ¶ 38.) On December 15, 2023, Director Hoegel mailed and emailed a letter to Defendants Barcliff and Essex JDC, invoking Plaintiff's records access authority based on its finding of probable cause, and requesting information related to school attendance, grievance logs, logs of incidents involving physical restraint, and the directory of youth and their guardian contacts. (*Id.*) Defendants denied Plaintiff's access to records. (*Id.* ¶ 39.) Plaintiff sent a follow up letter explaining its statutory authority. (*Id.* ¶ 42.) Disability Rights NJ's Legal Director and Director Hoegel then spoke to Essex County Counsel and sent a follow-up

email reiterating Plaintiff's authority to access director information on behalf of youth with disabilities. (*Id.* ¶¶ 43-44.) Defendants did not respond to the email and to date, has not provided the requested information, delaying Plaintiff's investigation. (*Id.* ¶¶ 47, 65-68.)

Defendants gave Plaintiff limited access to the facility through an accompanied tour in February 2024. (*Id.* ¶ 51.) Plaintiff conducted additional visits in April 2024, but was largely not permitted to access residential units, and minimally interacted with some youths at the facility who had been chosen by Essex JDC staff. (*Id.* ¶¶ 51-53.) To date, Plaintiff has not been permitted access to all areas where youth are permitted, nor have they been permitted to meet privately with any youth. (*Id.* ¶¶ 65-68.) Essex JDC also refused to permit Plaintiff access to the facility to take photos and maintains this refusal. (*Id.* ¶¶ 62-68.) Plaintiff requests that this Court issue a preliminary injunction against Defendants, requiring Defendants to immediately provide access to records, permit Plaintiff reasonable unaccompanied access to individuals at Essex JDC, and take photographs of the facility to the full extent permitted by law. (ECF 2, Motion at 32.) On August 8, 2024, the Court issued an order to show cause why the preliminary injunction should not be issued. (ECF 8.) The Court held oral argument on October 8, 2024.

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. In the Third Circuit, the four requirements Plaintiffs must satisfy to obtain the emergent injunctive relief sought are:

> (1) a reasonable probability of eventual success in the litigation, and (2) that [they] will be irreparably injured . . . if relief is not granted . . . . [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017) (citing *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir.

1974) (internal citations omitted)). The Third Circuit has also made clear that "[p]reliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994)).

"[A] district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two." *South Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 777 (3d Cir. 2001) (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)). It follows that a "failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *See South Camden Citizens in Action*, 274 F.3d at 777 (citing *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)). As a threshold matter, the Court therefore considers the first two prongs together. "Only when a plaintiff has sufficiently met the first two prongs, does the Court consider the third prong relating to the possibility of harm to other parties and finally, evaluate whether public interest is served by granting injunctive relief." *Tanko v. Moore,* No. 23-2187, 2023 WL 3033573, at *1 (D.N.J. April 21, 2023) (internal citation and quotation marks omitted).

III.    **ANALYSIS**

Applying the preliminary injunction framework here, the Court finds that Plaintiff is entitled to a preliminary injunction.

First, the Court finds that Plaintiff has established a reasonable probability that it will succeed on the merits of its claims under the PAIMI Act, PADD Act, and PAIR Act. The Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), 42 U.S.C. §§ 10801–10851

(2000), the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD"), 42

U.S.C. §§ 15001–15115 (2000), and the Protection and Advocacy of Individual Rights Act

("PAIR"), 29 U.S.C. § 794e (2000) (collectively, the "P & A Acts") authorize a protection and

advocacy system ("P & A system") to "monitor the care of and advocate on behalf of individuals

with mental illness and developmental or other disabilities*." Connecticut Off. of Protec. and

Advoc. For Persons With Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 233 (2d Cir. 2006)

(citing 29 U.S.C. § 794e(a)(1); 42 U.S.C. §§ 10801, 15001). "To further these objectives, the P &

A system 'has extensive authority to access individuals, patient records, and public and private

facilities.'" *Matter of Disability Rights Idaho Req. for Ada County Coroner Records Relating to

the Death of D.T.*, 168 F. Supp. 3d 1282, 1286 (D. Idaho 2016) (quoting 42 U.S.C. 10805(a));

(citing *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492,

497 (11th Cir. 1996) ("Tarwater") ("It is clear that [PAIMI] provides express authority for P & As

to gain broad access to records, facilities, and residents to ensure that [PAIMI's] mandates can be

effectively pursued.")).

The P & A Acts provide the authority for a P & A system, like Disability Rights NJ, to

"investigate incidents of abuse and neglect of individuals with mental illness if the incidents are

reported to the system or if there is probable cause to believe that the incidents occurred[.]" 42

U.S.C. § 10805(a)(1)(A). As such, both Plaintiff and Defendants agreed at oral argument that

Plaintiff is within its federal mandate to commence an investigation of abuse and neglect (1) "if

the incidents are reported to" Plaintiff, "or" (2) "if there is probable cause to believe that the

incidents occurred[.]" *Id*. Here, Plaintiff has demonstrated that it has a likelihood of success on the

merits on the basis of the statutory law empowering it to conduct investigations, access records,

etc. pursuant to the federal statutory framework. Defendants' subsequent refusal to allow Plaintiff

to proceed with its investigation impedes on Plaintiff's authority to investigate as vested by state and federal law. Accordingly, the Court finds that Plaintiff is likely to succeed on the merits of its claims.

Second, Plaintiff has demonstrated that it would suffer irreparable harm. Case law from around the country supports finding that a protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm. *See Ohio Legal Rights Serv. v. BR, Inc.*, 365 F. Supp. 2d, 883 (S.D. Ohio 2005) ("There is no dispute that a protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm."); *see also State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F. Supp. 2d 649, 653 (D. Conn. 2005); *Wisconsin Coal. for Advocacy, Inc. v. Czaplewski*, 131 F. Supp. 2d 1039, 1051 (E.D. Wis. 2001).

Finally, the equities further support granting a preliminary injunction. The Court does not believe that the requested injunctive relief will result in a greater harm to Defendants. In particular, nothing in the record suggests that the served defendants will suffer any sort of legally cognizable harm from the injunction. Additionally, public interest favors such relief as the public is well-served through the enforcement of duly-enacted laws. *See Reilly*, 858 F.3d at 176.

Accordingly, the Court grants Plaintiff's motion for a preliminary injunction.[2]

---

[2] The Court will not require Plaintiff to post a bond at this time. *See McCormack v. Twp. Of Clinton*, 872 F. Supp. 1320, 1328 (D.N.J. 1994) ("[T]he court first should weigh the potential loss to the enjoined party against the hardship that a bond requirement would impose on the applicant. Second, the court should consider whether the application seeks to enforce a significant federal right or a matter of public interest."); *see also South Camden Citizens v. NJ Dep't of Environ.*, 145 F. Supp. 2d 446, 503-05 (D.N.J. 2001) (waiving bond in case involving significant public interest).

IV.   **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Preliminary Injunction (ECF 2) is **GRANTED**.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendants are enjoined and restrained from:

(a) denying Disability Rights New Jersey's current requests for records pursuant to its statutory authority that exist in the custody of Essex County Juvenile Detention Center.[3]

(b) denying Plaintiff reasonable unaccompanied access to staff and individuals confined at Essex County JDC.[4]

(c) denying Plaintiff the ability to take photographs of the facility to the extent permitted by law, with the exception of windows, doors, signage or labels (i.e., cell numbers, directions, room and area designations, etc.).

**IT IS SO ORDERED.**

---

[3] This order does not encompass third parties who may be custodians of other medical or academic records. To the extent Defendants still contest providing directory records due to lack of consent, they are ordered to provide the most current directory of residents and their guardian contact information to Disability Rights New Jersey pursuant to 42 U.S.C. § 1085(a)(4) ("A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall . . . have access to all records of . . . any individual . . . with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect . . ."). *See also* 45 C.F.R. § 1326.25(a)(4) ("If the P&A determines there is probable cause to believe that the health or safety of an individual is in serious and immediate jeopardy, no consent from another party is needed.").

[4] In the interest of maintaining security efforts by the detention center, visits by Plaintiff should be announced in advance. Security personnel would be reasonable and therefore permissible accompaniment. *See* 42 C.F.R. § 51.42(c). Interviews with individuals at the detention center may be conducted with security personnel out of earshot in order to maintain confidentiality.

_/s/ Jamel K. Semper_____
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Jessica S. Allen U.S.M.J.
       Parties